THE STATE, EX REL. THE SUPERINTENDENT, &c., OF PUB-
LIC SCHOOLS IN THE CITY OF TRENTON, v. GEORGE W.
HAMMELL, COLLECTOR OF TAXES, &c.

1. Under the act entitled an act respecting common schools in the city
   of Trenton, the voters of the different wards of the city are author-
   ized to determine the amount to be raised each year for the support of
   the public schools. The amount thus determined on cannot be re-
   duced by the common council, in virtue of any authority in the sup-
   plement to the city charter, passed 14th March, 1856.
2. The collectors of the different wards failing to pay over to the super-
   intendent the whole money when collected, although acting under the
   direction and authority of the common council, may be proceeded
   against by *mandamus*.

On application for a writ of *mandamus*.

This case came before the court upon a statement of facts
agreed on, of which the following is an abstract:

On the 15th of March last, the superintendent of public
schools of the city of Trenton presented his annual account
to the board of trustees, who thereupon resolved that the
sum of $16,500 would be desired and needed for the support
of public schools of the city for the year 1865–66. The re-
port and estimate were reported forthwith by the trustees
to the common council upon the 4th of April, 1865. On
the 10th of April, 1865, the inhabitants of the city voting in
their different wards according to law, voted that the sum of
$16,500 should be raised for the support of free schools for
the year 1865–66; and this sum was thereupon certified to
the common council as the amount for which the greater num-
ber of votes had been given.

On the —— day of July following, the common council
ordered a tax to be assessed upon all the taxable property in
the city, of seventy cents on every $100—the same being
for county, city, and school purposes. The tax thus as-
sessed amounted to $56,000. By a supplement to the city
charter of 14th March, 1856, it was provided that the taxa-

State, ex rel. Sup't of Public Schools of Trenton, v. Hammell.

tion upon the real and personal estate for defraying the expenses of the city, should not exceed seventy cents upon the $100.

The common council, in making their estimate for necessary expenses, including the public schools, the fire department, the support of the poor, the police, &c., ascertained that the amount authorized to be raised by tax, with the other resources of the city, would be insufficient; and to meet the deficiency they reduced the amount to be raised for school purposes to $11,500, and also reduced the other items in like proportion.

The collectors have collected in part the moneys assessed in the several wards.

By the act of March 10th, 1856, entitled "An act respecting public schools in the city of Trenton," it is made the duty of the collectors of the city to pay over to the superintendent out of the first moneys by them collected, such sums as may from time to time be ordered to be raised for the support of public schools.

The collectors have paid over $11,500, and refuse to pay more, under the direction of the common council. At the time of such refusal the collectors had sufficient funds in their hands, raised as tax, to pay the full amount of $16,500.

The amount raised for school purposes, in the years immediately preceding the present, was as follows :

In 1860,..................................................$8,000
" 1861,.................................................. 9,500
" 1862,..................................................11,000
" 1863,..................................................11,000
" 1864,..................................................13,000

"Unless the said sum of $16,500 be paid to the trustees, the public schools must suffer greatly for want of funds to meet necessary expenses.

"And if the whole sum be paid to the trustees, the other departments must suffer greatly also."

The collectors give no bonds or other security to the trus-

tees of public schools, and the trustees have no remedy against them save the one they are now prosecuting.

The collectors of the several wards are required to give bonds to the city to pay over the money received by them for taxes to the city treasurer, and have given them accordingly.

*E. T. Green,* for relators.

1. The court can only regard the facts set out in the return. 7 *Wend.* 474.

2. By the school act of 1856 for the city of Trenton, the wards might direct to be raised as much as they think proper for school purposes, and the collectors are to pay to superintendent. The power of the legislature is absolute, unless restrained by the constitution. *Sell* v. *Corning,* 15 *N. Y. Rep.* 297 ; *People* v. *Draper,* 15 *N. Y. Rep.* 549.

3. The common council had no right to pass any ordinance to interfere with the duties or control the powers of the school officers. 2 *B. & C.* 602.

4. The duty of the collectors was to pay over according to the law ; not having done so, they are liable.

The receipt of the superintendent would have been a sufficient protection to them. *Tapping on Mandamus* 316, *marg. page;* 2 *Salk.* 699 ; *Holt* 401.

5. The common council had no right to make any deduction from the sum voted by the people.

An order to that effect is no defence for the collectors.

They have tax money enough in hand to pay the whole and should be made to pay.

*P. D. Vroom,* contra.

1. The power to raise money by taxation for school and other city purposes, is vested in the common council by the charter of 1837, and was without limit as to amount.

2. The school law for the city, of 10th March, 1856, gave no power to the trustees of common schools to raise money. They could only make estimates from year to year, of what

State, ex rel. Sup't of Public Schools of Trenton, v. Hammell.

might be needed, and the people must designate the amount by vote. The result must be certified to the common council, who order an assessment for that as well as other purposes.

3. The supplement to the charter, passed a few days after the school law, limited the amount which might be raised by tax for all purposes, to seventy cents on the $100. Out of this all the departments were to be paid.

4. It is just to infer that the legislature never intended, after making this limitation, that the people should have power, by vote, to appropriate for school purposes alone, all or the larger part of the whole sum which could be legally assessed and raised.

5. This limitation operated as a restriction on the power to raise money for public schools. The people could still, by vote, name the amount they wished to be raised, but it must be with reference to the limitation imposed. The power must be construed reasonably, or one department might destroy all the others.

The laws are *in pari materia*, and must be so construed as to give effect to both.

6. If this cannot be done, the court must give effect to the last law, which is the supplement to the charter of 14th March, 1856.

This gives to the common council the power to assess and raise from year to year, such sum as they shall deem expedient for all purposes for which they are authorized to raise money by their charter, in such manner as they have heretofore done, which shall be paid into the hands of the treasurer of the city, subject to the order of the common council; so as the amount raised shall not exceed the rate of seventy cents to $100.

This act repeals, in express terms, not only such parts of the charter as are inconsistent, but all other acts or parts of acts inconsistent with its provisions.

7. In this matter common council have acted on the principle that they were not only authorized but bound to have

regard to the interests of the whole community. They have made such an apportionment as the exigencies of the city required.

They ordered $11,500 to be assessed and raised for the public schools. That has been paid over. There is nothing in the hands of the collectors but what is required for other city purposes—for which it was raised.

7. The collectors are acting under the order of the common council, who hold their bonds to pay over the money received to the city treasurer.

If there is error in the proceedings, the remedy is against the common council, and not against the collectors.

HAINES, J. . Application is made to this court on behalf of the relators, "The Superintendent and Trustees of the Public Schools of the city of Trenton," a body incorporated by that name, for a peremptory *mandamus*, to be directed to the collectors of taxes of the several wards of that city, commanding them to pay over to the superintendent the sum of five thousand dollars, alleged to be due and unpaid of the money raised for the public schools.

By a state of the case, which the parties have agreed shall be taken as a return made to an alternative *mandamus*, it appears that, upon the report and recommendation of the superintendent and trustees, the inhabitants of the city at their annual ward meetings, held on the tenth day of April, 1865, by a vote taken pursuant to the statute, ordered that the sum of sixteen thousand five hundred dollars should be raised for the support of the public schools for the then current year. The collectors have paid to the superintendent eleven thousand five hundred dollars, leaving unpaid the sum of five thousand dollars now in question, and which they refuse to pay.

The reason assigned for such refusal is, that the common council has ordered them to pay to the superintendent of schools the sum of eleven thousand five hundred dollars only,

and to pay the balance to the treasurer of the city for other city purposes.

This presents the question, whether the common council have the right to appropriate to other purposes the money which the inhabitants have lawfully resolved to raise for the public schools, or to limit the amount so resolved to be raised. The answer to this question must depend upon the construction to be given to the act respecting public schools in the city of Trenton, and the provisions of the city charter.

The 12th section of the act respecting the schools of the city, passed March 10th, 1856, *Session Laws* 177, provides that the inhabitants of the city may, at their annual ward meetings, order to be raised by tax any sum of money for the support of public schools therein that they think proper; each voter indicating upon his ticket the amount he desires to be raised; that the amount of money for which the largest number of votes shall have been given shall immediately be certified by the ward clerks to the common council, who shall add the amount so determined, to the sum of money which they may order to be raised for other city purposes.

It further requires that such amount of money, as it is collected, shall be paid over by the collecting officers to the superintendent of public schools.

The sixth section of the act authorizes and requires the city collectors to pay over to the superintendent, out of the first moneys by them collected, such sums of money as may be directed to be raised for school purposes; and for such payments the receipt of the superintendent is to be a sufficient voucher.

It is insisted, on the part of the respondents, that the power thus given to raise money for the support of public schools, is restricted by the supplement to the city charter, passed on the 14th March, 1856, four days later than the act respecting public schools.

The second section of that supplement authorizes the common council to order and cause to be assessed and raised such sum or sums of money as they shall deem expedient for de-

fraying the expenses of the city, and for all purposes for which they are authorized by the act to which it is a supplement; to be assessed and collected as the common council may by ordinance direct; which taxes, when collected, shall be paid to the city treasurer and to be subject to the order of the common council.

But this section provides further, that it shall not be lawful for the common council to raise by taxation in any one year in the general assessment, an amount of money which shall cause a greater rate on the real and personal estate of the citizens, than seventy cents to one hundred dollars, unless the same be approved by a vote of the citizens at a special election. It is urged that this limitation of seventy cents to the one hundred dollars embraces the amount of money to be raised for the public schools, and that the common council are required to apportion the money so ordered for the schools, with the other money required to be raised for other city purposes; so that the whole amount assessed shall not exceed that rate. If such is the true construction of the act, the collectors have fully discharged their duty, and a writ of *mandamus* should not issue.

But in my judgment such is not the true construction of the act. The limitation of the rate applies clearly to the moneys ordered to be raised by the common council. The second section of the supplement specifies that, to be money for defraying the expenses of the city, and for all other purposes for which they are authorized by the original act to raise money.

On reference to that act, it appears that the common council are authorized to raise money for lighting, regulating, paving, flagging, and gravelling the streets, maintaining the poor, schooling poor children, defraying the contingent expenses of the city, and for all other purposes and objects authorized by the act. But there is no mention of public schools or authority to raise money for them. Provision for the education of poor children is a very distinct thing from that for the maintenance of public schools. The

power to raise money for the latter purpose is not given to the common council, but to the inhabitants at their annual ward meetings. The funds are distinct, and have nothing in common but the mere machinery of assessing and collecting. That for defraying the expenses of the city and for all city purposes proper, it is to be ordered by an ordinance of the common council, and when collected to be paid to the city treasurer, and through him disbursed for the purposes for which they were assessed. The fund for the public schools is ordered to be raised by the inhabitants of the city by a direct vote cast at their annual ward meetings. It is to be paid not to the city treasurer but to the superintendent of public schools, to be by him appropriated to the purposes for which it was ordered. The collectors are required to pay it out of the first moneys by them collected, and so to place the school money beyond any contingency of deficit or delay. The receipt of the superintendent is a sufficient voucher, and so the collectors are, as to payment of this fund, wholly independent of the city treasurer.

It is obvious that the legislature intended to place the public schools entirely beyond the control of the common council, and not to subject the fund ordered to be raised for them to any action or limitation by that place. And it is equally clear that the rate of seventy cents to the one hundred dollars applies to the moneys raised by the ordinance of the common council, and not to the money raised by the vote of the inhabitants for the public schools.

On this construction of the act, the common council are not required to apportion the moneys ordered to be raised for the public schools with the money raised for the ordinary city purposes. They have no power to limit the amount ordered to be raised for the public schools, or to apply any part of it to other purposes.

There is no conflict between the provisions of the city charter or of its supplement, and those of the act establishing public schools. The repealing clauses of the two acts,

which repeal all acts or parts of acts inconsistent with them respectively, do not repeal or modify any of the provisions of the act establishing public schools.

A question arises as to the remedy. The writ of *mandamus* is never issued except in cases where the legal obligation to perform the duty is clear. *State* v. *Jacobus*, 2 *Dutcher* 135. The writ must be directed to the officer whose duty it is to perform the act. *Tapping on Mand.* 316.

In this case the duty is clearly on the collectors. By the express terms of the sixth section of the act, they are authorized and required to pay over to the superintendent out of the first moneys collected by them, such sums of money as may from time to time be directed to be raised for the purposes of the public schools.

This duty so charged upon the collectors not having been performed by them, a remedy may be found in the use of a writ of peremptory *mandamus*. And if need be, it may be issued directed to the collectors, commanding them to pay to the superintendent the moneys yet unpaid by them of the sum ordered to be raised.

VAN DYKE, J.   This is an application on the part of the superintendent and trustees of public schools of the city of Trenton, against the collectors of the different wards of the city, to compel them to pay over certain moneys which it is alleged they have collected and have in hand, belonging to the applicants. A peremptory *mandamus* is applied for; but the proceeding seems, nevertheless, to be a friendly one, and is instituted and defended with a view to obtain the opinion of the court on the questions involved. A statement of the case, embracing all the material facts in the form of a return to an alternate *mandamus*, has been agreed to by the counsel in the case, and all mere informalities are waived.

By the charter of the city, passed March 7th, 1837, the common council had power to raise, by tax, money for " schooling poor children," and the city was also authorized

to receive its quota from the school fund of the state. These moneys were to be paid to the treasurer of the city, and be disposed of as the common council should direct. But on March 10th, 1856, there was passed an act of the legislature respecting public schools in the city of Trenton, which created therein a new corporation, by the name of " The Superintendent and Trustees of Public Schools of the city of Trenton." These officers are to be elected by the people at their annual elections, and they are to have, in the language of the act, " the control, regulation, and management of the public schools in the said city;" but little, if anything, being left for the common council to do in such matters, except to raise, by tax, such sums of money for the support of the schools, as shall be ordered by a vote of the inhabitants to be raised for that purpose.

The superintendent and trustees are to make and send to the common council, annually, estimates of the amount of money which, in their opinion, it will be desirable to raise by tax for the support of public schools in said city the ensuing year, which estimates are to be published in the newspapers of the city.

The inhabitants of the city are authorized at their annual ward meetings, to order to be raised by tax *any sum* for the support of public schools therein that they may think proper, and the amount of money for which the largest number of votes shall have been given at such election or ward meetings, shall be immediately thereafter certified to the common council, who are required to add the amount so determined to be raised, to the sum which they may order to be raised for *other* city purposes; which amount so voted as collected shall be paid over by the collecting officers to the superintendent of public schools, as is provided in a prior section of the act, which directs that the city collectors are authorized and *required* to pay over to the said superintendent, out of the *first* moneys by them collected, such sums as may from time to time be directed to be raised in said city for public

school purposes, and for which payments the superintendent's receipt is to be a sufficient voucher.

It seems that in April last, the preliminaries having been complied with, an election was held in the different wards to determine what sum should be raised in the city for the support of public schools for the ensuing year, and by a vote of 2550 to 4, the inhabitants determined that the sum of $16,500 should be raised by tax for that purpose. This election and its result was duly certified to the common council, whereupon the council, in view of the financial condition of the city, resolved and determined to raise by tax for all the purposes of the city, the public schools included, the sum of $56,000, and in apportioning this sum to the several purposes for which it was deemed necessary to raise money, the amount apportioned to public schools was, by the council reduced from the sum of $16,500, as voted by the inhabitants, to the sum of $11,500. This last mentioned sum of $11,500 the city collectors have paid over to the school superintendent, but refused to pay him the balance of $5000, for the reason that the common council has ordered them not to do so. This it is understood the common council did by its resolution of July last. When the balance of $5000 was demanded of the collectors by the superintendent, they all admitted that they had collected and had in hand money enough to pay such balance, if they had not been ordered to pay the same to the city treasurer.

Whether the common council had the right or power by any action which they could take in the matter, either to reduce the sum ordered to be raised by the vote of the inhabitants, or to arrest it or any part of it in the hands of the collectors after enough had been raised and collected and was in their hands to pay the whole of it, is the question for consideration.

This school law seems to be very imperative in its terms. By it the entire city is placed in a single district, and all power and authority over and concerning the schools is taken away from the common council and placed in the hands of

the superintendent and trustees, except the power and duty of causing to be raised by tax for the use of the schools, such sum or sums as shall be ordered to be raised by a vote of the inhabitants when such sum or sums are duly certified to them for that purpose. The only limitation on the amount which the inhabitants may order raised is their own will, that is, they may order, in the language of the act, such sums as they may think proper, while the common council seem to have no discretion or power of resistance, but are required to add the sum so ordered to be raised to the sum which they may order to be raised for other city purposes, and cause to be raised by a tax upon the people.

This money so ordered to be raised for school purposes is not to be paid to the city treasurer, but it is to be paid by the collectors directly to the school superintendent, and for which payment his receipt is to be a sufficient voucher.

Nor are the collectors permitted to pay a part of the moneys by them collected to the school superintendent and a part into the city treasury, but they are required to pay the sum so ordered to be raised to the school superintendent out of the *first* moneys which they shall collect. This the present collectors have not done, while it is admitted that they have collected and have in hand sufficient for this purpose. Their reason for not having done so is, that the common council has ordered them not to do so. But for doing this, the common council, as we have seen by the school law, have no authority, and their order to or upon the collectors can furnish no justification for their refusal to pay over the money as the act requires them to do to the superintendent.

If the common council can interfere to prevent the collection or paying over to the school superintendent of a part of the money ordered to be raised, why may they not do the same thing with regard to the whole of it, and thus frustrate entirely the school law of the city? The conclusion, I think, must necessarily be that the common council cannot interfere with the matter at all.

On March 14th, 1856, four days after the passage of the

school law referred to, the legislature passed a supplement to the charter of the city of Trenton. This supplement, it is suggested, modifies or affects the school law so as to take from it some of its force. If this supplement, being of later date than the school law, in any way comes in conflict with it, it will of course, to the extent of such conflict, affect it. But I do not perceive that there is any conflict between the two acts. The supplement to the charter does not in any way refer to the school law or to the schools of any kind in the city. It authorizes the common council to raise by tax as much money as they shall deem expedient for defraying the expenses of the city, and for all purposes for which they are authorized by the charter itself to raise money; but I cannot understand this authority as extending to the money ordered to be raised by a vote of the inhabitants for public schools, for if it does, then it entirely destroys the school law, for the money authorized by the supplement to be raised by order of the common council is all to be paid into the city treasury, and it is to be subject to the order of the common council. Consequently, if it should be the will of the common council that the public schools should have no money, they could not obtain a farthing of what had been raised. But such interpretation of the two acts I think cannot be sustained, nor has the common council itself heretofore so understood them; for it appears that since their passage, on several occasions and perhaps every year, certain sums of money have been ordered, by votes of the inhabitants, to be raised for school purposes, and they have been so raised and paid over by the collectors to the superintendent of the schools without, so far as appears, any objection.

By the supplement to the charter, the common council are not permitted to raise by taxation in any one year in the general assessments, an amount of money that shall cause a greater rate on the real and personal estate of the citizens than seventy cents on the one hundred dollars, unless the same shall be approved by a vote of the citizens at a special election, which the council is authorized to order and hold;

and it is said that the amount thus authorized was ordered to be raised, but that by appropriating to the schools the sum of $16,500 ordered to be raised, all the other departments of the city, where money is needed, would suffer badly. If all this be true, I do not see how it can alter the school law or impair its inflexible claim to have paid over to the superintendent the money ordered to be raised by the inhabitants out of the *first* moneys collected.

The common council have, I think, three modes of relieving themselves from this difficulty, if one it is.

In the first place, the school law requires them to *add* the amount ordered raised for school purposes to the sum which they may order to be raised for other city purposes, and on the supposition that there is no conflict between the school law and the supplement to the charter, I think they can by doing this raise the necessary amount without any violation of the restraining proviso in the supplement.

In the second place, the restraining clause in the supplement is confined to such amount as shall be assessed on the *property* of the citizens, but I can see no reason why the amount ordered to be assessed may not be increased considerably by what is known as a poll tax on those who vote the money, as well as on those who have to pay it.

And thirdly : if the amount to be raised cannot be increased in either of the modes suggested, it certainly can be by a vote of the citizens at a special election.

This right of the inhabitants to order, by their vote, the raising of large sums of money is supposed to inflict upon the community oppressive taxation. It certainly seems so, at times ; but at the same time, if the taxes can be equitably assessed upon all, it seems very much like the people voluntarily oppressing themselves for a very worthy object.

But whatever there is that is wrong, if anything, in relation to these laws in reference to public or common schools, can only be remedied by an appeal to the legislature. Such laws are within the legislative discretion, and cannot be disregarded by the courts, but must be enforced by them.

State, ex rel. Sup't of Public Schools of Trenton, v. Hammell.

I think, therefore, that the defendants are not justified in withholding the money claimed, but should pay the same over to the superintendent of public schools, and that a peremptory *mandamus* should issue for that purpose.

Let a *mandamus* issue.

BEDLE, J., concurred.

NOTE. On the 15th day of March, 1866, the legislature passed "An act to revise and amend the charter of the city of Trenton," in which it is provided that the superintendent and trustees of the public schools of the city of Trenton shall submit annually, to the common council, an estimate of the money necessary for school purposes, and the common council shall thereupon determine the amount to be raised and appropriated for such purposes, which shall be paid to the city treasurer, and by him to the school superintendent.